Good morning again, Your Honors. Jason Carr appearing on behalf of Petitioner-Appellant Derek Anthony Cosentino. It's been some 12 years since the shooting event in question, 10 years since the change of plea approximately. Massive volumes of litigation in both state and federal court. I stand before this court today with the issues crystallized to a couple of legal concepts and one critical factual finding. And I will concede to the court in all candor here today that my only hope of prevailing on this appeal is if I can convince the court that the district court, this court, that the district court's finding on page 318 of the EOR, paragraph 22, is clearly erroneous. That is my task here today. That finding in particular is that basically the theory of this case, when we came down to the federal evidentiary hearing, it crystallized as this. That this is a shooting that occurred with a lot of recipient witnesses and a fair amount of state evidence against my client. In the two-year period of investigation from arrest and charging to trial, the defense attorney, Mr. Manos, who's a very experienced defense attorney, recently retired, but he has over 25, 30 years of criminal defense experience, conducted an investigation with the help of his investigator, Mr. Diamond. Now what complicates this matter is that unfortunately Mr. Diamond has passed away and that becomes important because we don't know what Mr. Diamond actually told Costantino. Now what happened, Costantino had pending charges at the time that he was facing the murder charges in this case. He was sent off about 70 miles away to a prison called Indian Springs, which is about 70 miles northwest, northeast, excuse me, of Las Vegas. He was held there at various times and the record shows this in administrative segregation because he'd been in disciplinary problems and because of the nature of the charges that he was facing in murder charge. So this complicated the communication between defense counsel and client. Now what I would submit, well, our theory here is that Mr. Manos actually managed to develop favorable material in this case. His investigation was thorough. He found these two witnesses who said, well, no, I never saw Mr. Costantino with a gun. I saw the other most likely suspect with a gun. He found an alibi witness in the neighborhood who said she saw Mr. Costantino right before the shooting and he was wearing different clothing. He found a witness who would testify that Mr. Costantino's car, which was a key part of the state's case, the identification of Mr. Costantino's car. He found a witness in the neighborhood who said, well, lots of neighborhood kids drove the car. And he also found evidence of another person who said, well, he was pretty sure that the shooter was this other individual, Reggie Cole. So he found this information that was exculpatory. And this is an interesting case. We have two claims here, one of which is that his plea was not entered into knowingly and voluntarily because he didn't know about this exculpatory information. We also have an IAC claim, which is interesting because we have a defense attorney who, by all measures, did a great job in this case except for one facet, which is that the channel of communication between him and the client broke down. And that was partly because of the fact that the client was being held in strict penal conditions many miles away from Las Vegas. Now, what the district court found is that, no, that channel of communication did not break down, and that's the key factual finding I'll point the court to on page 318. The district court found that communication did not break down, and, in fact, Mr. Manos communicated to Mr. Costantino all the exculpatory information that he had unearthed. And the significance of this is that what our claim is that Mr. Costantino, and this is a guy who didn't plead guilty until after opening statements. There was a lot of indications he wanted to go to trial. After opening statements, the state came up with a favorable deal that he elected to take. And our theory is that, and Mr. Costantino says this explicitly under oath under the record, that if I had known about this exculpatory material, that would have tipped the balance for me, and I would have proceeded to go to trial rather than plead guilty. The district court found that, in fact, the exculpatory material was turned over, and, therefore, my claim has no factual basis. And I would submit that that finding was clearly erroneous, and the reason why, and this all comes down to a comparison of a pretty brief portion of the record. If you look at pages 243 to 246, this is Mr. Manos, the defense attorney, talking about his discovery practices, and what he says, you know, essentially in that portion of the record is that he believes that his policy was, A, you know, that he would not just send discovery to the prison because that led to problems of people getting a hold of the discovery and suddenly becoming state's witnesses, which is not an uncommon problem at all. That he, his procedure was that this information should be communicated to the client, but he had no specific recollection of it ever having been done. What Manos could testify is that it was my usual practice to do it. I was under the impression that my investigator, Mr. Diamond, was supposed to do it. I was under the impression that the other attorney, the co-counsel, who wasn't able to testify because he's had massive problems with the bar and with his personal life, and nobody could locate him before the hearing after this, that this other co-counsel was doing it. But Mr. Manos can never testify affirmatively that it was done. He's like, it was my policy to do it. It should have been done. I believed that it was done, but he specifically said, I had no specific recollection of it having been done. Contrast that with pages 277 and 78, 282 and 298, which is Mr. Costantino's testimony. And what Mr. Costantino says specifically is that I did not have this information. And, in fact, his testimony is somewhat credible, because there was a packet of seven or eight exhibits with exculpatory material. He looked through it and said, well, I knew about Exhibit 6, but I didn't know about these other things. I didn't find about this material until way after I pled, until, in fact, the direct appeal began. And if I had known about it, I would not have pled guilty. And he says it specifically, unequivocally. That is his testimony. Didn't the extort plan seem unbelievable? Yes, it did. And that is the problem I confront here today. So what do we do with that? We can't find that clearly erroneous. It's a difficult burden I have here. I freely conceded. The only thing that I can point to is that I need to find that finding clearly erroneous to have any hope of prevailing on this. My only mechanism for doing that is pointing the court to this record and saying that the testimony on one side from the attorney was equivocal and not specific. The testimony from my client was very specific, very factually detailed, and not equivocal at all. And my argument here to this court is that the district court's finding of fact is clearly erroneous because the court accredited general equivocal testimony over very specific factual information. And that's my point here today. Thank you. That helps us. Good morning. May it please the Court. My name is Tom Gover. I'm with the Nevada Office of the Attorney General. I appreciate the fact that Mr. Carr has focused the issues and really narrowed them down. This used to be a much larger appeal, but right now we're to the very question of whether or not Mr. Costantino's counsel had provided information or provided information to Mr. Costantino about his exculpatory evidence that he had discovered through these investigations. And obviously, we have the clearly erroneous standard. We also have a heightened level of scrutiny by this Court because we have a credibility finding. I would like to talk briefly to the communication issue that Mr. Carr raised, and I'll cut right to that. His argument that Judge Pro's finding of fact is clearly erroneous is based on the idea that Mr. Manos has no specific recollection of, you know, did I give these documents to the guy or did I just talk to him with it or not? But we have two channels of communication that happen in this specific case. When Mr. Manos was testifying regarding his discovery practices, he was discussing discovery that was incoming into his office during a two-year period of time while he had an investigator, and he specifically discussed about initial discovery that was turned over to Mr. Costantino. But because they had some problems at preliminary hearing where they thought that maybe a cellmate had gotten into the actual physical documents that, you know, and in addition to Mr. Manos's own practice, he decided, well, some of this stuff we'll just talk about. And he specifically talked or testified before Judge Pro about either how his investigator, Mr. Diamond himself, or his co-counsel, Mr. Mike Alitas, would have discussed these issues with him. And so I think that testimony in the record in and of itself supports Judge Pro's finding in paragraph 22 that, in fact, Mr. Costantino was aware of this allegedly exculpatory evidence at the time that he entered his plea. There's a second level of communication that occurred in this case. And as Mr. Carr alluded to, this entry of plea did not occur until the day of trial. This entry of plea occurred after Mr. Mike Alitas, co-counsel to Mr. Manos, and Mr. Manos himself both prepared for trial, had selected a jury, were engaged in opening argument. It wasn't until after this opening argument occurred that the State finally came forward with this plea negotiation, this plea offer. This is a time where, and at that time, Mr. Manos asked the Court for the rest of the afternoon off. We're going to go ahead and talk with our client about this. The testimony at the evidentiary hearing was that he spent up to four hours on that initial day. And in the record, excerpt of records 65 and 51 are the specific pinpoints of Mr. Manos' testimony, but he talks about how we went over all of the evidence, pro and con. We have the trial file, which is believable. I mean, they were going to trial. They had everything that they were going to present. And the testimony specifically is we went over all of that evidence, pro and con. We discussed all statements, police reports, investigative and discovery materials. That is also part of the specific finding of Judge Pro in paragraph number 22 of his findings, facts, conclusions of law. He specifically includes there that exhibits numbers 1, 2, 3, and 7 from the evidentiary hearing that were presented at the evidentiary hearing in the district court, that Costantino had knowledge of those items prior to entering this plea. So with these two levels of communication, the Court cannot find that Judge Pro's determination, number 22, is clear error. With maybe the initial, even with the initial question of whether or not Mr. Manos had specific recollection of whether or not his client had actual documents or someone had discussed with him these items, if you add the second layer where they're spending four hours prior to the entry of plea with the trial file, with two attorneys who were prepared to go to trial, there is absolutely no excuse, no reason why they wouldn't be able to do that. In fact, Mr. Manos did testify that they had discussed all those materials. I think even to stack up the burden for Mr. Carr even further, you know, this is a State matter where the Nevada Supreme Court also considered the voluntary nature of this plea. They might not have actually gotten into the specifics of which documents or which items of evidence Mr. Costantino was made aware of at the time of the plea entry, but there were other issues where that, the State court had an evidentiary hearing and they also found Mr. Costantino not credible in comparison to the testimony of his counsel. So there's a further level of deference there, I believe. It also adds credibility to the U.S. District Court's factual findings where you have another judge out there who pretty much had the same take on Mr. Costantino's credibility. And so if there's no further questions on that regarding this very limited issue that we're talking about, I'll go ahead and concede the rest of the time. All right. Thank you. Just one brief point to rebuttal. If you look at the District Court's order, the whole reason why we had a Federal evidentiary hearing is because the Federal District Court determined that the State evidentiary hearing was not fair to Mr. Costantino because he was not provided notice or an opportunity to challenge the evidence presented at that hearing. And so I would submit that any State factual findings are suspect because of that fact and that the State never appealed the Federal District Court's ruling on that matter. So I would submit that's all the case. Thank you. All right. Thank you both very much. That concludes our calendar for today. The case argued is submitted.
judges: Goodwin, B. Fletcher, Fisher